UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
WACHTELL, LIPTON, ROSEN, & KATZ,                                        :
                                                                        :        14 Civ. 80 (PAE)
                                       Plaintiff,                       :
                                                                        :        OPINION & ORDER
                -v-                                                     :
                                                                        :
CVR ENERGY, INC., ICAHN ENTERPRISES, L.P.,                              :
ICAHN ENTERPRISES HOLDINGS L.P., and CARL                               :
ICAHN,                                                                  :
                                                                        :
                                       Defendants.                      :
                                                                        :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

In a lawsuit filed in the Supreme Court of the State of New York, Plaintiff Wachtell, Lipton, Rosen, & Katz ("Wachtell") brought state-law claims for, *inter alia*, breach of contract and abuse of process against Defendants CVR Energy, Inc. ("CVR"), Icahn Enterprises, L.P., Icahn Enterprises Holdings L.P., and Carl Icahn (collectively, "Defendants"). Defendants then removed the action to this Court, claiming that Wachtell had fraudulently joined the latter three defendants[1] to the lawsuit in order to defeat diversity jurisdiction.

Before the Court now is Wachtell's motion to remand the action to New York State Supreme Court for lack of federal subject matter jurisdiction. For the reasons that follow, Wachtell's motion is granted.

---

[1] The Court refers to these defendants, *i.e.*, Icahn Enterprises, L.P., Icahn Enterprises Holdings L.P., and Carl Icahn, collectively, as the "Icahn Defendants."

1

**I.     Background**[2]

CVR is an energy company incorporated in Delaware, with its principal place of business in Texas or Kansas. Compl. ¶¶ 1, 11. This case arises out of the 2012 takeover of CVR by Carl Icahn, a New York-based investor. *Id.* ¶¶ 1, 12. In January 2012, Icahn purchased a large position in CVR and announced his intent to take a controlling stake in the company. *Id.* ¶¶ 1, 15. CVR retained Wachtell, as well as two investment banks (Goldman, Sachs & Co. ("Goldman Sachs") and Deutsche Bank Securities, Inc. ("Deutsche Bank")), to provide legal and financial advice during the takeover process. *Id.* ¶¶ 1, 16, 18. CVR entered into engagement letters with all three entities. *Id.* ¶¶ 20−28. In April 2012, the parties entered an agreement allowing Icahn to take control of CVR. *Id.* ¶¶ 31, 33.

After Icahn took control, he instructed CVR not to pay the banks or Wachtell for their services. *Id.* ¶¶ 33, 34. (By this point, Wachtell had already been paid, but Icahn continued to instruct CVR not to pay the banks. *Id.* ¶¶ 33, 34.) In June 2012, Goldman Sachs filed suit in

---

[2] The facts forming the background of the Opinion are drawn from the Complaint ("Compl.") (Dkt. 1 Ex. A), and other documents as specified. In resolving this motion, the Court treats all factual allegations in the Complaint as true. *See Federal Ins. Co. v. Internt'l Ltd.*, 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006) ("When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff." (internal quotation marks and citation omitted)).

Where appropriate, the Court considered other documents in the record, including: the Notice of Removal (Dkt. 1); the Declaration of James Sottile in Support of Motion to Remand to State Court ("Sottile Decl.") (Dkt. 15); the Declaration of Keith Schaitkin in Opposition to Motion to Remand to State Court ("Schaitkin Decl.") (Dkt. 20); the Declaration of Herbert Beigel in Opposition to Motion to Remand ("Beigel Decl."), and the documents attached thereto (Dkt. 21). *See Arseneault v. Congoleum*, No. 01 Civ. 10657 (LMM), 2002 WL 472256, at *6 (S.D.N.Y. March 26, 2002), *reconsideration denied*, 2002 WL 531006 (S.D.N.Y. Apr. 8, 2002) ("The Second Circuit . . . has said that, on jurisdictional issues, federal courts may look outside the pleadings to other evidence in the record," and therefore the court will "consider the deposition testimony and other material outside of the pleadings submitted on this motion [to remand.]" (internal quotation marks, citations, and alterations omitted)).

New York State court to recover fees allegedly owed it by CVR, *see Goldman, Sachs & Co. v. CVR Energy, Inc.*, Index No. 652149/2012 (N.Y. Sup. Ct.) (filed June 21, 2012); in August 2012, Deutsche Bank did the same, *see Deutsche Bank Securities Inc. v. CVR Energy, Inc.*, Index No. 652800/2012 (N.Y. Sup. Ct.) (filed August 10, 2012).  These actions were consolidated into a single case (the "Bank Action").  Compl. ¶ 34.

On September 24, 2012, the court in the Bank Action entered a stipulation and order agreed to by the parties regarding the production of confidential and privileged information (the "Protective Order").  *Id.* ¶ 35.  The Protective Order by its terms "limit[s] the review, copying, dissemination and filing of . . . information to be produced by either party and their respective counsel or by any non-party in the course of discovery in [the Bank Action] to the extent set forth [in the Order]."  Beigel Decl. Ex. 2.  The Protective Order applies to "the production, exchange and discovery of documents and information that the parties agree merit confidential treatment," and allows any party to designate information as "confidential."  *Id.* ¶¶ 1, 2.  Specifically, the Protective Order provides that "Confidential Information," *i.e.,* documents, testimony, the information contained therein, and other information designated as confidential, "shall be utilized by the Receiving party and its counsel only for purposes of this litigation and for no other purposes."  *Id.* ¶¶ 3(a), 6.  The Protective Order further defines "Receiving party" as "the party to this action and/or any non-party receiving 'Confidential Information' in connection with depositions, document production or otherwise."  *Id.* ¶ 3(c).

In December 2012, in response to a subpoena in the Bank Action, Wachtell produced certain documents regarding the fee arrangement it had negotiated with the banks on CVR's behalf pursuant to the Protective Order, and marked those items as "Confidential."  Compl. ¶ 36.

In September 2013, Keith Schaitkin, an attorney for Icahn, contacted representatives for Wachtell. He threatened that CVR intended to bring a malpractice suit against Wachtell for, allegedly, failing to properly advise CVR's board about the banks' fees. *Id.* ¶ 37. Schaitkin then sent Wachtell a draft complaint, which incorporated documents that Wachtell had produced in the Bank Action pursuant to the Protective Order and had designated as "Confidential." *Id.* Wachtell refused to pay money, or enter into an anticipatory settlement, to foreclose the possibility of suit. *Id.* ¶ 38.

On October 24, 2013, CVR, controlled by Icahn, filed a malpractice action against Wachtell in U.S. District Court for the District of Kansas. *See CVR Energy, Inc. v. Wachtell Lipton Rosen & Katz*, No. 13 Civ. 2547 (JAR) (TJJ) (D. Kan.) (filed Oct. 24, 2013) (the "Kansas Action"). CVR alleged that Wachtell, prior to Icahn's assumption of control, had failed to inform CVR about fees it would owe the banks under the terms of their engagement letters. *See* Compl. ¶¶ 38−43. The complaint in the Kansas Action also referenced documents produced by Wachtell in the Bank Action that had been designated as "Confidential." *Id.* ¶ 43.

On December 18, 2013, Wachtell filed the present action in New York State court. *See Wachtell Lipton Rosen & Katz v. CVR Energy, Inc., et al.*, Index No. 654343/2013 (N.Y. Sup. Ct.) (filed Dec. 18, 2013). Wachtell's Complaint alleges that Defendants had improperly "caused" CVR to file the Kansas Action. Wachtell brings claims under state law against all Defendants for (1) breach of the Protective Order issued in the Bank Action (Count Two); and (2) abuse of process in connection with the filing of the Kansas Action (Count Three). In addition, in a third cause of action brought only against CVR, Wachtell seeks a declaratory judgment that it is not liable to CVR for malpractice (Count One). *See* Compl.

4

On January 7, 2014, Defendants removed the case to this Court on the basis of diversity jurisdiction.[3]  Notice of Removal ¶ 10.  On February 3, 2014, Wachtell filed a motion to remand to state court, Dkt. 13, and a supporting memorandum of law, Dkt. 14 ("Pl. Br.").  On February 12, 2014, Defendants filed a memorandum of law in opposition to Wachtell's motion to remand. Dkt. 19 ("Def. Br.").  On February 19, 2014, Wachtell replied.  Dkt. 24.  On February 24, 2014, the Court heard argument.

## II.     Legal Standards

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  District courts have original jurisdiction over cases "between . . . citizens of different states," where the amount in controversy exceeds $75,000.  *Id.* § 1332(a).  Diversity jurisdiction under § 1332(a) "requires complete diversity between all plaintiffs and defendants."  *Pampillonia v. RJR Nabisco Inc.*, 138 F.3d 459, 460 (2d Cir. 1998).

On a motion to remand, "the defendant bears the burden of demonstrating the propriety of removal."  *Cal. Pub. Employees' Ret. Sys. v. Worldcom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (internal quotation marks and citation omitted).

---

[3] The Complaint does not assert claims arising under federal law.  The only possible basis for federal jurisdiction is, therefore, diversity of citizenship pursuant to 28 U.S.C. § 1332(a).

**III.    Discussion**

Wachtell is a citizen of New York.[4]  The Icahn Defendants are also citizens of New York.[5]  There is no doubt that if the Icahn Defendants are properly joined to this case, they destroy diversity of citizenship and thus Defendants' ability to remove.  *See Pampillonia*, 138 F.3d at 460 (presence of New York citizens on both sides of a case "destroys diversity citizenship, and thereby deprives the district court of subject matter jurisdiction under 28 U.S.C. § 1332 (which requires complete diversity between all plaintiffs and defendants) and defeats the defendants' petition for removal").  Defendants argue, however, that Wachtell's state-court Complaint fraudulently joined the Icahn Defendants, for the improper purpose of depriving this Court of subject matter jurisdiction.

It is well established that "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy."  *Id.* at 460–61.  "In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court."  *Id.* at 461.

---

[4] Wachtell's principal place of business is New York.  Compl. ¶ 10; Notice of Removal ¶ 9. Thus, Wachtell is a citizen of New York for purposes of determining whether there is diversity jurisdiction.  *See Pampillonia*, 138 F.3d at 460 n.2 ("[Defendant's] principal place of business is New York.  [Defendant] is therefore a citizen of New York for the purposes of diversity of citizenship.").

[5] Carl Icahn is domiciled in New York; Icahn Enterprises, L.P. and Icahn Enterprises Holdings L.P. each has as its principal place of business New York.  Compl. ¶¶ 12−14; Notice of Removal ¶ 8.  Thus, the Icahn Defendants are citizens of New York for the purposes of determining whether there is diversity jurisdiction.  *See Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) ("For purposes of diversity jurisdiction, a party's citizenship depends on his domicile."); *Pampillonia*, 138 F.3d at 460 n.2.

Significant here, the burden of proving fraudulent joinder is "heavy." *Id.* "Joinder is considered fraudulent where there can be *no* recovery under the law of the state on the cause alleged. . . . Any possibility of recovery, even if slim, militates against a finding of fraudulent joinder[.]" *Nemazee v. Premier, Inc.*, 232 F. Supp. 2d 172, 178 (S.D.N.Y. 2002) (internal quotation marks omitted) (emphasis added); *see also Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 183 (S.D.N.Y. 2003) (finding of fraudulent joinder appropriate only where it is "legally impossible" for plaintiff to state a claim under state law); *accord Dexter v. A C & S Inc.*, No. 02 Civ. 6522 (RCC), 2003 WL 22725461, at *2 (S.D.N.Y. Nov. 18, 2003). In assessing whether a defendant has been fraudulently joined, "all factual and legal issues must be resolved in favor of the plaintiff." *Pampillonia*, 138 F.3d at 461.

Defendants do not argue that Wachtell's pleadings are fraudulent. The motion for remand, therefore, turns on whether Defendants can demonstrate, by clear and convincing evidence, that recovery on Counts Two or Three is legally impossible—that it is "*per se* precluded*" under state law. *Nemazee*, 232 F. Supp. 2d at 178. The Court will address in turn each of Wachtell's two state-law claims against the Icahn Defendants.

### A. The Claim for Breach of the Protective Order (Count Two)

The Complaint alleges that all Defendants, including the Icahn Defendants, breached the Protective Order "by using Confidential Information [produced by Wachtell pursuant to the Protective Order] for purposes other than the [Bank Action], including, among other things, drafting a complaint that was used in an attempt to force a cash settlement from Wachtell Lipton and drafting a complaint for malpractice that CVR filed in the [Kansas Action]." Compl. ¶ 52.

Defendants argue that Wachtell cannot possibly state a claim for breach of the Protective Order because: (1) under New York law, there is no independent cause of action for breach of a

court order; and (2) although Wachtell alternatively casts its claim based on breaches of the Protective Order as one for breach of contract, it cannot pursue such a theory against the Icahn Defendants, because the Icahn Defendants were not signatories to the Protective Order. Defendants must prevail on both of these arguments to establish fraudulent joinder. Here, the Court need only address the second argument, to the effect that the Icahn Defendants cannot be held liable on a breach of contract theory. The Court rejects this argument. Based on the pleadings, Wachtell has, at the very least, a *possibility* of recovery on Count Two against the Icahn Defendants on this alternative, contract-based theory of recovery. The existence of this legally viable theory of recovery defeats Defendants' claim of fraudulent joinder.

It is well-settled under New York law that owners of a corporation may be held liable for the corporation's actions when "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993) (explaining the general rules governing piercing the corporate veil). Here, the Complaint alleges that the Icahn Defendants owned a controlling stake in CVR; that the Icahn Defendants exercised control over CVR in the Bank Action; that CVR, at the direction of the Icahn Defendants, procured confidential information from Wachtell pursuant to the Protective Order; and, finally, that CVR, also at the direction of the Icahn Defendants, used that confidential information for purposes collateral to the Bank Action—*i.e.*, threatening Wachtell with a separate lawsuit, and then filing that suit. *See* Compl. ¶¶ 34, 36−38. These factual allegations, which at this stage must be taken as true, support the inference that the Icahn Defendants exercised "complete domination and control" of CVR, and used that control "to commit a wrong against the plaintiff [that was] the proximate cause of the plaintiff's loss," *Allied*

8

*Programs Corp. v. Puritan Ins. Co.*, 592 F. Supp. 1274, 1277 (S.D.N.Y. 1984) (internal quotation marks and citation omitted).  That the Icahn Defendants themselves were not signatories to the Protective Order, therefore, does not, as a matter of law, necessarily preclude recovery against the Icahn Defendants on Count Two.

To be sure, Defendants have a counterargument.  Attempting to distinguish the cases that Wachtell cites, they dispute that a veil-piercing claim is viable under New York law on these facts.  *See* Def. Br. 10−13.  But defendants do not cite any cases that definitively foreclose as a matter of law—or come close to so foreclosing—the claim that the Icahn Defendants are liable on Count Two by virtue of having controlled CVR with respect to the relevant conduct.[6]

In any event, Wachtell has a plausible argument that the Protective Order, within its four corners, bound the Icahn Defendants directly, and thus the Icahn Defendants could be found liable even without recourse to veil-piercing.  By its terms, the Order applied to any "Receiving party," defined as "the party to [the Bank Action] and/or any non-party receiving 'Confidential Information' in connection with depositions, document production or otherwise," Beigel Decl. Ex. 2 ¶ 3(c); it directed that "Confidential Information shall be utilized by the Receiving party and its counsel only for purposes of this litigation and for no other purposes," *id.* ¶¶ 3(a), 6.  Defendants argue that the "Complaint nowhere alleges that the Icahn Parties intended to be bound by the [Protective] Order," and therefore the Icahn Defendants cannot be held liable for breach of that Order.  Def. Br. 11.  Wachtell argues, however, that the Icahn Defendants were non-parties who received confidential information in connection with the Bank Action and used

---

[6] Moreover, the Court of Appeals has noted that "a decision whether to pierce the corporate veil in a given instance will necessarily depend on the attendant facts and equities, [and] the New York cases may not be reduced to definitive rules governing the varying circumstances when the power may be exercised." *Morris*, 82 N.Y.2d at 141.  The fact-intensive nature of the veil-piercing inquiry reinforces the conclusion that Defendants failed to establish that recovery for Wachtell is legally impossible here.

it for a purpose other than that litigation, and therefore "[t]hey are answerable to . . . Wachtell Lipton[] for breaches of the order." Pl. Br. 8.  A New York court may or may not accept this argument as sufficient to support a state-law breach of contract claim, and of course, the facts adduced in discovery may or may not ultimately substantiate these factual allegations.  But to succeed on a claim of fraudulent joinder, the removing defendants must show, as a matter of law and by clear and convincing evidence, that it is *impossible* for plaintiffs' claim to prevail.  *See Dexter*, 2003 WL 22725461, at *2 (to establish fraudulent joinder, "it is not even enough for Removing Defendants to show that Plaintiffs' cause of action against . . . Defendants would not survive a motion to dismiss").  Defendants have not shown that recovery on Wachtell's breach of contract theory is legally impossible.  They thus have not carried the heavy burden of demonstrating fraudulent joinder.

### B. The Claim for Abuse of Process (Count Three)

The Complaint separately alleges that CVR, under the Icahn Defendants' control and direction, subpoenaed documents from Wachtell in the Bank Action, which were produced pursuant to the Protective Order entered by the New York court; and that the Icahn Defendants then improperly used confidential information contained in those documents to threaten Wachtell with a malpractice suit and make a demand for payment.  *See* Compl. ¶¶ 33−43, 54−55.

Under New York law, "[t]he elements of an abuse of process claim are: (1) regularly issued civil or criminal process; (2) an intent to do harm without excuse or justification; and (3) use of the process in a perverted manner to obtain a collateral objective."  *Cimerring v. Merrill Lynch Mtge. Invs., Inc.*, 35 Misc. 3d 1242(A), at *14 (N.Y. Sup. Ct. 2012) (citing *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984)); *see also Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003); *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).

Defendants primarily challenge the sufficiency of the Complaint on the first element of Wachtell's abuse of process claim; they argue that no action for abuse of process can lie against the Icahn Defendants because the Icahn Defendants did not *themselves* cause process to be issued. *See* Def. Br. 14−16. But, contrary to Defendants' thesis, the case law firmly supports the proposition that "[t]he gist of the action for abuse of process lies in the improper *use* of process *after* it is issued." *Parkin v. Cornell Univ., Inc.*, 78 N.Y.2d 523, 530 (1991) (internal quotation marks and citations omitted) (emphases added); *see also Hershey v. Goldstein*, 938 F. Supp. 2d 491, 518 (S.D.N.Y. 2013) (an "abuse of process claim lies against a defendant who . . . *employs* regularly issued legal process" (internal quotation marks and citation omitted) (emphasis added)); *Bright View Trading Co. v. Park,* No. 03 Civ. 2330 (HB), 2004 WL 2071976, at *6 (E.D.N.Y. Sept. 16, 2004) ("[I]n its broadest sense, abuse of process may be defined as the misuse or perversion of regularly issued legal process for a purpose not justified by the nature of the process. . . . To show that regularly issued process was perverted to the accomplishment of an improper purpose is enough." (internal quotation marks and citation omitted)). Defendants do not cite, nor has the Court found, cases requiring for liability to attach that the defendant have personally caused the process to be issued.[7]

Thus, Defendants cannot show that the Complaint fails to state a claim for abuse of process, let alone meet the clear and convincing evidence standard for demonstrating fraudulent

---

[7] In support of the same argument, Defendants also contend that Wachtell has failed to allege that the Icahn Defendants issued process. However, the Complaint can be read to allege that the Icahn Defendants caused, or at the very least played a role in, the issuance of process. The Complaint states that CVR acted "under the Icahn Defendants' control and direction" in the Bank Action, and used the Bank Action to "obtain[] Confidential Information from Wachtell Lipton" pursuant to the Protective Order. Comp. ¶ 55. This is almost certainly sufficient to state a claim for abuse of process under New York law. *Cf. Reisner v. Stoller*, 51 F. Supp. 2d 430, 456 (S.D.N.Y. 1999) ("A claim for abuse of process can also be stated against an attorney who prepares or causes the abused process to be issued in bad faith and for the purpose of gaining a collateral advantage.").

joinder, *i.e.,* that recovery is a legal impossibility. *See Nemazee*, 232 F. Supp. 2d at 178 (finding of fraudulent joinder warranted only where a defendant can show, by clear and convincing evidence, that plaintiff has "no possibility of legal recovery" under state law).

### C. Defendants' Claim for Severance

Resolving all legal and factual issues in favor of Wachtell, as the Court must on this motion for remand based on fraudulent joinder, there is clearly a possibility that the Complaint states legally viable state-law claims against the Icahn Defendants both for breach of the Protective Order and for abuse of process. Accordingly, the Court rejects Defendants' claim of fraudulent joinder. Because the Icahn Defendants were properly joined to the case, "this Court lacks subject matter jurisdiction and remand [is] appropriate." *Id*.

Defendants nonetheless ask that the Court "exercise its discretion" under Federal Rule of Civil Procedure 21 to sever the two claims against all Defendants (Counts Two and Three), and retain jurisdiction over the declaratory judgment claim against CVR alone (Count One). Def. Br. 3, 23−25. The Court, however, lacks discretion to so act. To be removable under 28 U.S.C. § 1441, a civil action must have been capable of being filed in federal court in the first instance, and "the law requires the Court to consider the propriety of removal only at the time it was perfected." *Federal Ins. Co. v. Int'l Ltd.*, 422 F. Supp. 2d 357, 383 (S.D.N.Y. 2006). The presence of the Icahn Defendants destroys complete diversity of citizenship, and thus deprives the Court of subject matter jurisdiction over the entire action. The law is clear that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). That is precisely what the Court does now.

## CONCLUSION

For the foregoing reasons, Wachtell's motion to remand this case to New York State Supreme Court is granted. The Clerk of Court is respectfully directed to terminate the motions pending at Dkt. 4 and 13 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 18, 2014
       New York, New York